Kyle Wallor (Nebraska Bar No. 21346)
Lamson, Dugan and Murray, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Phone: (402) 397-7300

Barry N. Gutterman (BG6410)
Barry N. Gutterman & Associates, P.C.
60 East 42nd Street, 46th Floor
New York, New York 10165
Phone: 212-983-1466
Email: BNGASSC@AOL.COM
Attorneys for Defendant
Union Pacific Railroad Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                             :

|  |  |
|---|---|
| In Re:  TRAIN DERAILMENT NEAR TYRONE OKLAHOMA ON April 21, 2005 | MDL No. 1936 (BSJ) (DF) 06 CV0615 (BJS) (DF), 06CV3522 (BJS) and other consolidated cases |

**MOTION FOR LEAVE TO FILE COMPLAINT IN INTERVENTION**

-------------------------------------------------------------x

       Comes now the Intervenor, Union Pacific Railroad Company ("Union Pacific"), and pursuant to Federal Rule of Civil Procedure 24, hereby seeks leave of the Court to file the attached Complaint in Intervention.  In support of its motion, Union Pacific hereby states and alleges as follows:

       1.      This case involves the carriage of goods from Shanghai, China to Chicago, Illinois.

       2.      After Plano Molding Co. ordered steel molds from CMT International, Inc., World Commerce Services, LLC ("World") arranged for Kawasaki Kisen Kaisha to transport the steel molds from China to Illinois aboard the CHANG JIANG BRIDGE.

       3.      Kawasaki Kisen Kaisha and Union Pacific are parties to an agreement for the purchase of rail services called the Exempt Rail Transportation Agreement ("ERTA").  Pursuant

to the ERTA, Kawasaki Kisen Kaisha arranged rail carriage of the steel molds by Union Pacific from Long Beach, California to Chicago, Illinois.

4.      After the CHANG JIANG BRIDGE arrived in Long Beach, California, Kawasaki Kisen Kaisha turned over the container in which the steel molds were located to Union Pacific. Union Pacific began carrying the container aboard a double stack train to its intended destination in Chicago, Illinois.

5.      On April 21, 2005, while the train was traveling near Tyrone, Oklahoma, the steel molds broke through the floor of its container and fell onto the railbed below. The steel molds were immediately struck by the following railcar and the train derailed from the tracks. Numerous containers filled with cargo were damaged or destroyed as a result of the derailment.

6.      Union Pacific's track, railcars, and other associated equipment were damaged as a result of the derailment.

7.      Kawasaki Kisen Kaisha's shipping containers were damaged as a result of the derailment.

8.      The improper loadings of the steel molds in caused the derailment to occur. Pursuant to the terms of the World Bill of Lading and the Kawasaki Kisen Kaisha Bill of Lading, Plano and CMT are liable to defend and indemnify Kawasaki Kisen Kaisha and Union Pacific.

9.      Under the terms and conditions of the Kawasaki Kisen Kaisha Bill of Lading, Plano and CMT as "Merchants," are liable for, and must defend and indemnify Kawasaki Kisen Kaisha and Union Pacific against any and all claims, losses, damage, damages, judgments, settlements, costs or expenses (including attorney's fees and costs) that arise out of or are in any way related to the stowage, securing, blocking and/or bracing of the contents of shipping containers.

10.    Under the terms and conditions of the World Bill of Lading, Kawasaki Kisen Kaisha and Union Pacific are entitled to the rights and/or defenses provided under the World Bill of Lading.

11.    As Merchants under the World Bill of Lading, Plano and CMT must indemnify Union Pacific against any and all injury loss or damage (including attorney's fees and costs) that arise out of or are in any way related to any breach of this warranty.

12.    Plano and CMT are liable to Union Pacific and Kawasaki Kisen Kaisha under the Bills of Lading, for their negligence in failing to ensure that the steel molds were safely and securely packed inside their container and were otherwise safely prepared for intermodal transportation, and under the doctrines of indemnification and contribution.

SUBMITTED this 20th day of August, 2008.

UNION PACIFIC RAILROAD COMPANY,
Plaintiff in Intervention,

By:    /s/Kyle Wallor_____
       Kyle Wallor (KW4183)
       William M. Lamson, Jr. (WL1837)
       LAMSON, DUGAN AND MURRAY, LLP
       10306 Regency Parkway Drive
       Omaha, NE 68114
       Phone: (402) 397-7300

       and

       Barry N. Gutterman (BG6410)
       BARRY N. GUTTERMAN & ASSOC, P.C.
       60 East 42nd Street, 46th Floor
       New York, New York 10165
       Phone: 212-983-1466

CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2008, I electronically filed the forgoing with the clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

**Indemnity Ins. Co.  (No. 06-0615), Federal Insurance (No. 06-3038), Royal & Sun (No. 06-2557), Mistui Sumitomo  (No. 06-2956), ACK Controls  (No. 06-3040)**
David L. Mazaroli                              dlm@mazarolilaw.com

**K-Line America, Inc. and Kawasaki Kisen Kaisha, Ltd.**
John D. Kimball                               jkimball@blankrome.com
David D. Jensen                               djensen@blankrome.com

**World Commerce Services, LLC**
Kenneth N. Wolf                               KWolf@strtrade.com

**Tokio Marine, et al.  (No. 06-5159)**
Keith B. Dalen                                KDalen@hillrivkins.com

**Navigators Management Co.  (No. 06-3042)**
Lawrence C. Glynn, Esq.                       lglynn@nicolettihornig.com

**Philips PC Peripherals  (No. 06-2962)**
Edward C. Radzik                              eradzik@mcdermottradzik.com

**Horizon Intermodal Express**
James W. Carbin                               jwcarbin@duanemorris.com
Alissa Ryder                                  amryder@duanemorris.com

**Cargo Channel Services Ltd.**
Henry P. Gonzalez, LL.M.                      gonzalez@rofgw.com

**Plano Molding Co.**
Allen C. Wasserman .                          awasserman@lockelord.com
R. James DeRose, III                          RDeRose@lordbissell.com

**CMT International**
John F. Etzkorn                               Johnetz@aol.com

By:    /s/Kyle Wallor
       Kyle Wallor (KW4183)
       William M. Lamson, Jr. (WL1837)
       LAMSON, DUGAN, AND MURRAY LLP

Kyle Wallor (Nebraska Bar No. 21346)
Lamson, Dugan and Murray, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Phone: (402) 397-7300

Barry N. Gutterman (BG6410)
Barry N. Gutterman & Associates, P.C.
60 East 42nd Street, 46th Floor
New York, New York 10165
Phone: 212-983-1466
Email: BNGASSC@AOL.COM
Attorneys for Defendant
Union Pacific Railroad Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | : | MDL No. 1936 (BSJ) (DF) |
| In Re:  TRAIN DERAILMENT NEAR | : | 06 CV0615 (BJS) (DF), 06CV3522 |
| TYRONE OKLAHOMA ON April 21, 2005 |  | (BJS) and other consolidated cases |
|  | : |  |
|  |  | **COMPLAINT IN** |
|  |  | **INTERVENTION** |

------------------------------------------------------------------x

Comes now the Plaintiff in Intervention, UNION PACIFIC RAILROAD COMPANY

("Union Pacific"), by and through its undersigned attorneys, for its Complaint in Intervention

against Defendants PLANO MOLDING COMPANY ("Plano") and CMT INTERNATIONAL,

INC. ("CMT") allege upon information and belief as follows:

     1.     This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and

is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure.

2.      This Complaint seeks money damages, contractual indemnity, and declaratory relief.

3.      Venue is proper in this Court.

## THE PARTIES

4.      KL is a Japanese corporation with its principal place of business in Tokyo, Japan. KL is an ocean common carrier offering "intermodal" transportation of goods, including ocean and land transport. KL uses independent contractor railroads and truckers to perform the inland moves.

5.      KAM is a corporation organized under the laws of the state of Michigan with its principal place of business in Richmond, Virginia. KAM acts solely as an agent for KL, is not an ocean or rail carrier and performs no transportation services.

6.      UPRR is a corporation organized under the laws of the state of Delaware with its principal place of business in Omaha, Nebraska. UPRR is a rail carrier offering railroad transportation services in the United States.

7.      Plano is a corporation organized under the laws of the state of Illinois with its principal place of business in Plano, Illinois, and is engaged in the manufacture of injection-molded plastic cases for guns, tackle, tools, cosmetics, and other items. Plano is subject to *in personam* jurisdiction in the state of Illinois.

8.      CMT is a corporation organized under the laws of the state of Illinois with its principal place of business in Carbondale, Illinois, and is engaged in the business of arranging for the manufacture, sale, and shipment of steel injection molds from Asia to the United States.

CMT is a member of the En Jinn Group, which is a group of companies based in Taiwan and China. CMT is subject to *in personam* jurisdiction in the state of Illinois.

## BACKGROUND

## PLANO ORDERS THE STEEL MOLDS

9. On or about November 6, 2004, Plano requested that CMT provide a price quote to "Design, Engineer, Construct and Deliver" specialty steel injection molds made to meet special specifications (the "Steel Molds").

10. On November 16, 2004, CMT provided Plano with a price quote and specified that the terms of the shipment would be "F.O.B. Shanghai," such that title to the Steel Molds would pass in Shanghai.

11. On November 19, 2004, Plano submitted a purchase order for the Steel Molds to CMT. The purchase order indicated that "CMT (EnJinn Group)" would "Design, engineer, construct and supply" the Steel Molds.

12. CMT arranged to have Kunshan Yuanjin Plastic & Electronic Co., Ltd., a company located in Suzhou, China ("Kunshan"), manufacture the Steel Molds in China. Kunshan is also a member of the En Jinn Group.

13. Representatives of both Plano and CMT traveled to China to supervise and inspect the Steel Molds while they were being manufactured.

14. CMT billed Plano for the cost of shipping the Steel Molds from China to Chicago, Illinois, and also for the cost of United States customs duties.

3

## SHIPMENT BOOKED WITH
## WORLD COMMERCE SERVICES

15.    Plano requested that World Commerce Services, LLC ("World") arrange for shipment of the Steel Molds to Illinois.

16.    World is a limited liability company organized in the state of Illinois with its principal place of business in Schaumburg, Illinois. World is engaged in business as a Non-Vessel Operating Common Carrier ("NVOCC"). As an NVOCC, World contracts to ship goods from one place to another, but does not itself operate vessels. Through an agent in China, World arranged for KL to transport the Steel Molds from China to Illinois.

17.    Plano and CMT both communicated with representatives of World prior to, during, and after the booking of the shipment.

18.    On or about March 10, 2005, Plano instructed World to change the sales term from "F.O.B. Shanghai" to "D.D.P. Plano."

19.    On April 3, 2005, World issued Bill of Lading No. SHA05038141, reflecting carriage of shipping container TRLU 273341-0 from Shanghai, China to Chicago, Illinois (the "World Bill of Lading"). The World Bill of Lading identified the CHANG JIANG BRIDGE as the "Exporting Vessel."

20.    Plano and CMT knew or should have known that World was arranging for KL to transport the goods on their behalf.

21.    The World Bill of Lading specifically provides:

> Carrier [World] shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods. Each servant, agent, subcontractor (including sub-subcontractors), or other person whose services have been used to perform this contract shall be

4

entitled to the rights, exemptions from, or limitations of, liability, defenses and immunities set forth herein.

22.     Bills of Lading and Waybills are documents customarily issued by ocean carriers or NVOCC's to reflect the carriage of goods. A Bill of Lading or Waybill includes standard terms and conditions that carriers and NVOCCs must file with the Federal Maritime Commission in Washington, DC ("FMC"). A carrier's or NVOCC's Bills of Lading and Waybills and their associated terms and conditions are a matter of public record.

23.     The World Bill of Lading identifies Plano as the Consignee of the Steel Molds, CMT as the Notify Party, and Kunshan as the Shipper.

24.     Both Plano and CMT had made previous shipments with World and had previously received copies of the terms and conditions of the World Bill of Lading.

## WORLD BOOKS THE SHIPMENT WITH KL

25.     On approximately March 28, 2005, World's agent in Shanghai booked the Steel Molds shipment with KL on board the CHANG JIANG BRIDGE. World had previously (on approximately March 20, 2005) booked the Steel Molds shipment with KL for carriage on board the AKASHI BRIDGE, but that booking had not been completed prior to the vessel's departure from Shanghai.

26.     World specifically advised Plano and CMT that it was making both bookings with KL.

27.     On April 3, 2005, KL issued an electronic Waybill bearing the number KKLUSH9951551 (the "KL Waybill"), reflecting carriage from Shanghai, China to Long Beach,

California on board the vessel M/V CHANG JIANG BRIDGE, with further inland carriage to Chicago, Illinois.

28.     The KL Waybill identifies THI Group, Ltd. in Shanghai, China ("THI") as the Shipper and World as the Consignee.

29.     The KL Waybill incorporates the terms and conditions of KL's standard import Bill of Lading ("KL Bill of Lading") and Tariff.

30.     The KL Waybill, the KL Bill of Lading, and KL's Tariff are on file with the Federal Maritime Commission and are a matter of public record.

31.     Both Plano and CMT had been party to, or had otherwise been involved in, prior shipments made through KL.  In this connection, both Plano and CMT had previously received copies of the terms and conditions pertaining to the KL Waybill and the KL Bill of Lading.

## KL ARRANGES RAIL TRANSPORT WITH UPRR

32.     KL and UPRR are parties to an agreement for the purchase of rail services called the Exempt Rail Transportation Agreement ("ERTA").  Pursuant to ERTA, KL arranges rail transportation for individual Shippers with UPRR.

33.     KL arranged rail carriage of the Steel Molds by UPRR from Long Beach, California to Chicago, Illinois.

## LOADING THE STEEL MOLDS

34.     After the initial booking KL supplied container TRLU 273341-0 to THI in China. THI acted as an agent of World, Plano and CMT.

35.     The Steel Molds were loaded inside container TRLU 273341-0 while the container was in the custody and control of THI.

6

36.     The Steel Molds were heavy, dense steel blocks weighing approximately 18,900 and 6,200 pounds each.

37.     Shipment of the Steel Molds required special care because they were so heavy and dense.  Even though the weight of the cargo was within the shipping container's weight limit, the container could not withstand extreme concentrations of weight over small areas of its floor.

38.     Pertinent laws and regulations and industry standards and norms require that heavy, dense cargos be blocked and braced and otherwise secured so that the weight is evenly distributed throughout the container and so that the cargo will not move or shift during transit.

39.     Plano and CMT knew or should have known that shipment of the Steel Molds would require special care, and that laws, regulations, and industry standards required proper blocking and bracing to distribute the weight of the Steel Molds inside the shipping container.

40.     On March 22, 2005, THI returned container TRLU273341-0 to KL.  In accordance with industry custom, KL received container TRLU 273341-0 in sealed condition.

41.     UPRR did not know the manner in which the cargo inside container TRLU 273341-0 had been packed.

42.     In contravention of industry standards and norms and of the guidelines published by UPRR and KL, the Steel Molds were not properly stowed inside container TRLU 273341-0. The Steel Molds were improperly blocked and braced and were otherwise not properly secured.

43.     Plano and CMT or their agents or other third-parties acting on their behalf arranged for and/or participated in the loading of the Steel Molds inside container TRLU 273341-0.

44.    Plano and CMT or their agents or third-parties acting on their behalf knew or should have known that the Steel Molds were not properly stowed inside container TRLU 273341-0.

## THE DERAILMENT

45.    On April 18, 2005, the M/V CHANG JIANG BRIDGE arrived at Long Beach, California and began unloading its cargo.

46.    KL turned over container TRLU 273341-0 to UPRR at the Long Beach intermodal facility and the container was loaded on railcar DTTX 73196.

47.    UPRR carried container TRLU 273341-0 aboard double-stack train KTSKS7-17 from Long Beach to its ultimate destination in Chicago, Illinois.

48.    On April 21, 2005, while the train was traveling near Tyrone, Oklahoma, the Steel Molds broke through the floor of container TRLU 273341-0 and fell onto the railbed below. The Steel Molds were immediately struck by the following railcar and the train derailed from the tracks. Numerous containers filled with cargo were damaged or destroyed as a result of the derailment.

49.    UPRR's track, railcars, and other associated equipment also were damaged as a result of the derailment.

50.    After the derailment, CMT and Plano inquired into the status of the Steel Molds shipment, submitted claims to KL and/or KAM in respect of the Steel Molds, and otherwise acted to accept the shipment.

## THE NEW YORK LITIGATION

51.     On January 25, 2006, Indemnity Insurance Company of North America ("IINA") brought a civil action against UPRR in the United States District Court for the Southern District of New York.  This suit is docketed under the number 06 Civ. 0615 and is assigned to the Honorable Barbara S. Jones.  This suit seeks to recover for certain cargo shipments that were allegedly damaged in the derailment.

52.     Other persons seeking to recover for cargo shipments that were allegedly damaged in the derailment brought additional and subsequent actions against UPRR in the Southern District of New York.  These actions were consolidated with the above-referenced IINA suit and are collectively referred to as the "New York Litigation."

53.     UPRR filed a Third-Party Complaint against Plano, CMT and the other Third-Party Defendants on March 1, 2006.

54.     The Third-Party Complaint UPRR against Plano and CMT alleged that improper loading of the Steel Molds in container TRLU 273341-0 caused the derailment to occur, and that pursuant to the terms of the World Bill of Lading and the KL Waybill, Plano and CMT were liable to defend and indemnify UPRR.

55.     CMT moved to dismiss the third-party complaint on the ground of lack of personal jurisdiction on March 24, 2006.

56.     Plano moved to dismiss the Third-Party Complaint on the ground of lack of personal jurisdiction on May 1, 2006.

57.     On June 14, 2007, the district court granted the motions of Plano and CMT and dismissed the claims asserted against them on the ground of lack of personal jurisdiction.

9

## DAMAGES SUSTAINED AS A
## RESULT OF THE DERAILMENT

58.     As a result of the derailment, various persons claiming interests in the shipments

that were aboard the derailed train are prosecuting the claims at issue in the New York Litigation

against UPRR.  These plaintiffs seek to recover approximately $2,881,033.11 on account of

damages allegedly sustained to their respective shipments.

59.     KL and KAM were the owners or lessors of shipping containers that were

damaged in the derailment.

60.     UPRR was the owner, lessor, or person otherwise responsible for the loss, repair

and maintenance of the train, railcars, track, and associated components.  UPRR sustained a loss

of approximately $2,900,189.14, together with interest, in consequence of damage sustained to

its train, railcars, track, and associated components.

61.     UPRR has sustained costs and expenses, including attorney's fees, in consequence

of the claims asserted against it in the New York Litigation.  These costs and expenses should be

indemnified by the defendants herein.

## THE KL BILL OF LADING

62.     The KL Bill of Lading defines the term "Merchant" as follows:

> "Merchant" includes the shipper, consignor, consignee, owner and receiver
> of Goods, and Holder, and anyone acting on behalf of any such person,
> including but not limited to agents, servants, independent contractors and
> freight forwarders.

63.     UPRR is entitled to the benefit of the rights and/or defenses provided by or under

the KL Bill of Lading

64.     Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," are liable for, and must defend and indemnify KL and its subcontractors or agents (including UPRR) against, any and all claims, losses, damage, damages, judgments, settlements, costs, or expenses (including attorney's fees and costs) that arise out of or are in any way related to the stowage, securing, blocking and/or bracing of the contents of shipping containers, the closing or sealing of shipping containers, the distribution of cargo weights within shipping containers, or the suitability of any shipping containers and/or the contents of any shipping containers for carriage.

65.     Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," are liable for, and must defend and indemnify KL and its subcontractors or agents (including UPRR) against, any and all claims, losses, damages, judgments, settlements, costs, or expenses (including attorney's fees and costs) that are suffered or incurred as a result of the failure to declare any package containing more than one metric ton or as a result of the failure to clearly and durably mark the outside of the package.

66.     Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," warranted that the cargo in the Container was properly stowed, secured, blocked and braced, with a proper weight distribution, and was otherwise in all respects safe for intermodal transport including rail carriage.

67.     The Steel Molds were not properly stowed, secured, blocked or braced in the container and/or were so configured as to be too heavy to be safely carried in the container and/or the weight thereof was improperly distributed and the tendering for shipment of the sealed

11

container in that condition was negligent and a breach of Merchants' duties and/or warranties to KL and its subcontractors or agents (including UPRR).

68.    The losses and damage alleged in the New York Litigation result from causes for which Plano and CMT are responsible as "Merchants" under the terms and conditions of the contract of carriage with KL.

69.    The other losses and damages suffered by UPRR due to the Derailment result from causes for which any and all persons who are Merchants are responsible under the terms and conditions of the contract of carriage with KL.

## THE WORLD BILL OF LADING

70.    The World Bill of Lading defines the term "Merchant" as follows:

> "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

71.    KL and its subcontractors and agents (including UPRR) are entitled to the rights and/or defenses provided by or under the World Bill of Lading.

72.    Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," warranted that the stowage of the Steel Molds inside the container was safe and proper and suitable for handling and carriage and must indemnify UPRR against any and all injury, loss, or damage (including attorney's fees and costs) that arise out of or are in any way related to any breach of this warranty.

73.    Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," promised to comply with all laws or regulations concerning overweight containers

and must indemnify UPRR against any loss or liability suffered or incurred as a result any failure to comply with such laws or regulations.

74.    Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," warranted that the particulars furnished with regard to the shipment were correct, and Merchants must indemnify UPRR against any and all claims, penalties, losses, or damages (including attorney's fees and costs) that arise out of any inaccuracy or lack of timely presentation of particulars pertaining to the Steel Molds shipment.

75.    The Steel Molds were not properly stowed, secured, blocked or braced in the Container and/or were so configured as to be too heavy to be safely carried in the Container and/or the weight thereof was not properly distributed and the tendering for shipment of the sealed Container in that condition was negligent and a breach of Plano's and CMT's duties and/or warranties under the World Bill of Lading

76.    The losses and damage alleged in the New York Litigation result from causes for which Plano and CMT, as "Merchants," are responsible under the terms and conditions of the World Bill of Lading.

77.    The other losses and damages suffered by UPRR due to the Derailment result from causes for which Plano and CMT, as "Merchants," are responsible under the terms and conditions of the World Bill of Lading.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION AGAINST PLANO:**
**INDEMNIFICATION OF UPRR UNDER THE BILLS OF LADING**

78.    UPRR repeats and realleges each and every allegation contained in paragraphs 1 through 77 of this Complaint as if set forth herein in full.

79.    Plano is a "Merchant" as defined in the KL Bill of Lading.

80.    Plano is a "Merchant" as defined in the World Bill of Lading.

81.    Plano had actual or constructive notice of the terms of the KL Waybill, the KL Bill of Lading, and KL's Tariff.

82.    Plano had actual or constructive notice of the terms of the World Bill of Lading.

83.    As a Merchant under the terms and conditions of the KL Bill of Lading, Plano must defend and indemnify UPRR against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which UPRR may incur or be held liable to pay, on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

84.    Alternatively, as a Merchant under the terms and conditions of the World Bill of Lading, Plano must defend and indemnify UPRR against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which UPRR may incur or be held liable to pay, on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

## SECOND CAUSE OF ACTION AGAINST PLANO:
## RECOVERY OF UPRR'S DAMAGES UNDER THE BILLS OF LADING

85.    UPRR repeats and realleges each and every allegation contained in paragraphs 1

through 84 of this Complaint as if set forth herein in full.

86.    Plano is a "Merchant" as defined in the KL Bill of Lading.

87.    Plano is a "Merchant" as defined in the World Bill of Lading.

88.    Plano had actual or constructive notice of the terms of the KL Waybill, the KL

Bill of Lading, and KL's Tariff.

89.    Plano had actual or constructive notice of the terms of the World Bill of Lading.

90.    As a Merchant under the terms and conditions of the KL Bill of Lading, Plano is

liable for the damages suffered by UPRR on account of the Derailment, including specifically

$2,881,033.11 in damages sustained by UPRR in respect of damaged track, ties, railcars, and

associated components and equipment.

91.    Alternatively, as a Merchant under the terms and conditions of the World Bill of

Lading, Plano is liable for the damages suffered by UPRR on account of the Derailment,

including specifically $2,881,033.11 in damages sustained by UPRR in respect of damaged track,

ties, railcars, and associated components and equipment.

## THIRD CAUSE OF ACTION AGAINST PLANO:
## NEGLIGENCE (DAMAGES)

92.    UPRR repeats and realleges each and every allegation contained in paragraphs 1

through 91 of this Complaint as if set forth herein in full.

15

93.    Plano had a duty to ensure that the Steel Molds were safely and securely packed inside container TRLU 273341-0 and were otherwise safely prepared for intermodal transportation.

94.    By its participation in the packing the container, its provision of instructions regarding the packing of the container, and/or by its acquiescence in the improper packing of the Steel Molds inside the container, Plano breached its duty to ensure that the Steel Molds were safely and securely packed.

95.    Plano's negligence caused the damages suffered by UPRR.

96.    Plano is liable to UPRR for the damages they have suffered in consequence of the derailment.

### FOURTH CAUSE OF ACTION AGAINST PLANO:
### NEGLIGENCE (INDEMNITY, CONTRIBUTION)

97.    UPRR repeats and realleges each and every allegation contained in paragraphs 1 through 96 of this Complaint as if set forth herein in full.

98.    Plano owed a separate and independent duty to UPRR to ensure that cargo tendered for carriage was safely and securely packed inside container TRLU 273341-0 and was otherwise safely prepared for intermodal transportation.

99.    By its participation in the packing the container, its provision of instructions regarding the packing of the container, and/or by its acquiescence in the improper packing of the Steel Molds inside the container, Plano breached its duty to ensure that the Steel Molds were safely and securely packed.

100.    Plano's negligence caused the cargo damages sought by Plaintiffs in the New York Litigation.

101.    If UPRR is held liable to Plaintiffs in the New York Litigation, such liability will be on account of the fault of Plano.  UPRR is free from fault.

102.    Plano is accordingly liable to indemnify UPRR for any and all damages assessed against it in the New York Litigation, and also for attorney's fees and costs.

103.    In the alternative, Plano is accordingly liable to contribute to UPRR for any damages that may be assessed against it in the New York Litigation, and also for attorney's fees and costs.

## FIFTH CAUSE OF ACTION AGAINST CMT:
## INDEMNIFICATION OF UPRR UNDER THE BILLS OF LADING

104.    UPRR repeats and realleges each and every allegation contained in paragraphs 1 through 103 of this Complaint as if set forth herein in full.

105.    CMT is a "Merchant" as defined in the KL Bill of Lading.

106.    CMT is a "Merchant" as defined in the World Bill of Lading.

107.    CMT had actual or constructive notice of the terms of the KL Waybill, the KL Bill of Lading, and KL's Tariff.

108.    CMT had actual or constructive notice of the terms of the World Bill of Lading.

109.    As a Merchant under the terms and conditions of the KL Bill of Lading, CMT must defend and indemnify UPRR against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including

any amounts which UPRR may incur or be held liable to pay, on account of the Derailment, and

for attorney's fees and costs incurred in connection therewith.

110.    Alternatively, as a Merchant under the terms and conditions of the World Bill of

Lading, CMT must defend and indemnify UPRR against the claims asserted in the New York

Litigation and against any other claims, losses, damages, judgments, settlements, costs, or

expenses, including any amounts which UPRR may incur or be held liable to pay, on account of

the Derailment, and for attorney's fees and costs incurred in connection therewith.

### SIXTH CAUSE OF ACTION AGAINST CMT:
### RECOVERY OF UPRR'S DAMAGES UNDER THE BILLS OF LADING

111.    UPRR repeats and realleges each and every allegation contained in paragraphs 1

through 110 of this Complaint as if set forth herein in full.

112.    CMT is a "Merchant" as defined in the KL Bill of Lading.

113.    CMT is a "Merchant" as defined in the World Bill of Lading.

114.    CMT had actual or constructive notice of the terms of the KL Waybill, the KL Bill

of Lading, and KL's Tariff.

115.    CMT had actual or constructive notice of the terms of the World Bill of Lading.

116.    As a Merchant under the terms and conditions of the KL Bill of Lading, CMT is

liable for the damages suffered by UPRR on account of the Derailment, including specifically

$2,881,033.11 in damages sustained by UPRR in respect of damaged track, ties, railcars, and

associated components and equipment.

117.    Alternatively, as a Merchant under the terms and conditions of the World Bill of

Lading, CMT is liable for the damages suffered by UPRR on account of the Derailment,

including specifically $2,881,033.11 in damages sustained by UPRR in respect of damaged track, ties, railcars, and associated components and equipment.

### SEVENTH CAUSE OF ACTION AGAINST CMT: NEGLIGENCE (DAMAGES)

118.    UPRR repeats and realleges each and every allegation contained in paragraphs 1 through 117 of this Complaint as if set forth herein in full.

119.    CMT had a duty to ensure that the Steel Molds were safely and securely packed inside container TRLU 273341-0 and were otherwise safely prepared for intermodal transportation.

120.    By its participation in the packing the container, its provision of instructions regarding the packing of the container, and/or by its acquiescence in the improper packing of the Steel Molds inside the container, CMT breached its duty to ensure that the Steel Molds were safely and securely packed.

121.    CMT's negligence proximately caused the damages suffered by UPRR.

122.    CMT is accordingly liable to UPRR for the damages it has suffered in consequence of the derailment.

### EIGHTH CAUSE OF ACTION AGAINST PLANO: NEGLIGENCE (INDEMNITY, CONTRIBUTION)

123.    UPRR repeats and realleges each and every allegation contained in paragraphs 1 through 122 of this Complaint as if set forth herein in full.

124.    CMT owed a separate and independent duty to UPRR to ensure that cargo tendered for carriage was safely and securely packed inside container TRLU 273341-0 and was otherwise safely prepared for intermodal transportation.

19

125.    By its participation in the packing the container, its provision of instructions regarding the packing of the container, and/or by its acquiescence in the improper packing of the Steel Molds inside the container, CMT breached its duty to ensure that the Steel Molds were safely and securely packed.

126.    CMT's negligence caused the cargo damages sought by Plaintiffs in the New York Litigation.

127.    If UPRR is held liable to Plaintiffs in the New York Litigation, such liability will be on account of the fault of CMT.  UPRR is free from fault.

128.    CMT is accordingly liable to indemnify UPRR for any and all damages assessed against it in the New York Litigation, and also for attorney's fees and costs.

129.    In the alternative, CMT is accordingly liable to contribute to UPRR for any damages that may be assessed against it in the New York Litigation, and also for attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, UPRR prays that:

(a)    This Honorable Court declare that Plano and CMT are obligated to defend and indemnify UPRR against the claims asserted in the New York Litigation;

(b)    Defendants Plano and CMT be adjudged liable to UPRR for any and all loss or damage to cargo and for any amounts that UPRR may be held to pay to any other party in the New York Litigation, together with interest and costs and attorney's fees incurred in connection therewith;

(c)    Alternatively, that Defendants Plano and CMT be adjudged liable to contribute to UPRR against any amounts that UPRR may be held liable to pay to any other party in the New York Litigation, together with interest and costs and attorney's fees incurred in connection therewith;

20

(d)     Defendants Plano and CMT be adjudged liable to UPRR for UPRR's other losses and damages as alleged herein, together with interest and costs and attorneys fees incurred in connection therewith; and

(g)     This Honorable Court grant UPRR such other and further relief as the Court may deem just, equitable and proper.

SUBMITTED this 20th day of August, 2008.

UNION PACIFIC RAILROAD COMPANY,
Plaintiff in Intervention,

By:    /s/Kyle Wallor
       Kyle Wallor (KW4183)
       William M. Lamson, Jr. (WL1837)
       LAMSON, DUGAN AND MURRAY, LLP
       10306 Regency Parkway Drive
       Omaha, NE 68114
       Phone: (402) 397-7300

       and

       Barry N. Gutterman (BG6410)
       BARRY N. GUTTERMAN & ASSOC, P.C.
       60 East 42nd Street, 46th Floor
       New York, New York 10165
       Phone: 212-983-1466

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2008, I electronically filed the forgoing with the clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

**Indemnity Ins. Co. (No. 06-0615), Federal Insurance (No. 06-3038), Royal & Sun (No. 06-2557), Mistui Sumitomo (No. 06-2956), ACK Controls (No. 06-3040)**
David L. Mazaroli                           dlm@mazarolilaw.com

**K-Line America, Inc. and Kawasaki Kisen Kaisha, Ltd.**
John D. Kimball                             jkimball@blankrome.com
David D. Jensen                             djensen@blankrome.com

**World Commerce Services, LLC**
Kenneth N. Wolf                             KWolf@strtrade.com

**Tokio Marine, et al. (No. 06-5159)**
Keith B. Dalen                              KDalen@hillrivkins.com

**Navigators Management Co. (No. 06-3042)**
Lawrence C. Glynn, Esq.                     lglynn@nicolettihornig.com

**Philips PC Peripherals (No. 06-2962)**
Edward C. Radzik                            eradzik@mcdermottradzik.com

**Horizon Intermodal Express**
James W. Carbin                             jwcarbin@duanemorris.com
Alissa Ryder                                amryder@duanemorris.com

**Cargo Channel Services Ltd.**
Henry P. Gonzalez, LL.M.                    gonzalez@rofgw.com

**Plano Molding Co.**
Allen C. Wasserman .                        awasserman@lockelord.com
R. James DeRose, III                        RDeRose@lordbissell.com

**CMT International**
John F. Etzkorn                             Johnetz@aol.com


By:     /s/Kyle Wallor
        Kyle Wallor (KW4183)
        William M. Lamson, Jr. (WL1837)
        LAMSON, DUGAN, AND MURRAY LLP